The next matter, number 251831, Tommy Giguere v. Stacey Tardif. At this time, would counsel for the appellant please introduce himself on the record to begin. Good afternoon. Attorney Matthew Barak for the appellant, Stacey Tardif, and I would respectfully ask to reserve Judge Barron three minutes for rebuttal. You may have it. May it please the court. There are really three or four issues that I want to make sure I touch upon. The first issue is that the district court committed clear error here by fixating the analysis of totality of the circumstances under Monanski to a fixed end date of August 28, 2024. By doing so, the court admittedly and readily ignored substantial and critical evidence in the lives of these young children, ignoring over a year of their lives. That is demonstrative error under Monanski. Totality of the circumstances in a holistic approach requires the district court to examine all relevant evidence, all relevant data points. Moreover... But counsel, are you making an argument right now about the habitual residence issue? Is that the point? Yes. The second, the corollary point is by cutting off the analysis one year, approximately, rather than reviewing the analysis up until the time of trial, admittedly doing so, that in the lives of these children, you're talking about that they were here within the Commonwealth for two and a half years. What's our measuring date supposed to start from? I think Monanski, as I read it, says that you determine habitual residence at the time of removal or retention. So you do have to figure out what the removal or retention date is. Do you disagree with that? I disagree with that. In fact, I believe that Monanski, I know that Monanski actually talks about a review of all circumstances... That are relevant once you've identified that date. The date is one factor. It's not the determinative factor. I don't disagree... Counsel, if I may, just to make sure we're talking about the same thing so we can understand your argument, I'm looking at Monanski right now. I think I'm on page... let me see where I am... Page 77, and it says the place where a child is at home at the time of removal or retention ranks as the child's habitual residence. And then it also goes on to say that we don't have a categorical approach, that we examine that the fact that the parties have shared intent is one reason... That's separate from the timing point. I mean, it says quite clearly it's at the time of removal or retention. How can we ignore those words in the decision? I'm not asking you to ignore them, but what the court did, and what is error, is that they stopped their analysis. What I'm saying is that... Is there any case you're aware of where a court has considered events that occurred outside the time that begins with the identified date of retention? This very circuit in Dacosta, they specifically said that post-petition evidence is admissible and can be relied upon in determining a well-settled defense. But that's not the habitual residence. Yes, but well-settled defense, this court has also said, that the well-settled defense... Okay, but just help me. With respect to forget well-settled cases, just habitual residence cases, is there any case that has looked at circumstances outside the time frame from when it starts with the identified date of retention or removal? I don't think it's come up at this point to the first circuit since when asked. Is there a case, any other court that's ever done that? I don't believe that there was a court that examined it, that we've cited in our brief. All right. What do you have left, unless Judge Lopez, did you want to ask more about this? Just so I'm sure I understand your position, the district court identified the date of retention as, I think, August 20th of 2024 or something like that. And then the lawsuit under the Hague Convention was filed within a year of that, and that's quite critical. Given the timing of the lawsuit, does it not follow that you do not consider what's going on with the children, if you will, after the date of retention? That just seems to be black-letter law. If it had been filed after a year, that's a different proposition, but that's not what we have here. Well, I respectfully disagree. I think that when you read Monanski, it is clear that it's not supposed to be the analysis tied to a specific rigid date. That, in fact, from a common-sense standpoint, to ignore that these children had lived in the Commonwealth for 80% of one child's and 50% of their lives for two and a half years. Well, counsel, I can see the logic. If you have a date of retention and then the aggrieved parent takes a long time to invoke the Hague Convention, that it would then make sense to, given that what's at issue here ultimately is the best interest of the children, that you would want to see what's been happening with the children after that date of the wrongful retention. That makes sense, but that's not the rule. The lawsuit was filed within a year, and so you don't get the benefit. Isn't that accounted for by the well-settled? Yes. The exact thing Judge Lopez is talking about is accounted for by the well-settled document. He is, but that was not this case. When we talk about habitual residence, to bring it back to what else Monanski says, is it does not, and I think this is an important point, habitual residence does not turn on the existence of an actual agreement between the parties. So it follows that the corollary is true, that the fact that an agreement broke down does not determine habitual residence. That's true. In fact, what the court said in Monanski, going back to my initial point, is although the date may be instructive, it is not determined, demonstrative, and this court specifically in Monanski rejected the rigid date to be applied, and this court in multiple cases has continuously held that all relevant facts must be determined and that the issue of well-settled, to your point, that concept mirrors the concept of habitual residence. So they're like twins. We look at the analysis from the eyes of the child. So to ignore a child who has been in a certain place for almost a year belittles common sense. Let's say you're wrong about that point. Fine. Okay? Maybe you're not. But if you were, you still have the view that you can win. Correct? Yes. Yeah, I think, well, there's two other points, major points. The second point is that the father here certainly acquiesced to Massachusetts, and I believe that- I'm sorry, before you get to that, I thought you also thought even on habitual residence, you win even if you take the timing analysis that the district- Yes, yes. Could you just explain why that is? Because I think objectively here you have the following facts that demonstrate that this was and is the habitual residence of these children. You have the fact that the time that they were here, you have the fact that the language, they ended up speaking English proficiently, that they were in school for years. In fact- And the house was sold. The house was sold. They abandoned the house. So how long, on the view of timing the district court identified, how long were the children and the couple in this country? Well, they came to December of 20, was it 22, the end of 22, I believe. They attended preschool from January- It was about a year and a half, I think. It was a year and a half. December to August. And how much of that time were they living in their own residence as opposed to the parents' residence? They were living in their own residence, rental, and then months later they purchased a property in Salzburg. And if we total up the purchase time and the rental time but discount the time they lived in their parents, how long is that period? I believe it was within the year when they bought it. About a year? Or less than that. Less than a year? I don't have an exact date on the tip of my head, but it was shortly thereafter. They rented originally and then they purchased a place. And then they sold their home in Canada. This is not a trick question to you. This is a question potentially favorable to you. But that's not a tiny piece of time, even in the constrained time period from your perspective that we're talking about. That's correct. What does the case law suggest about being in a place for, roughly speaking, a year in your own residence when you have no other residence in the other place? I'd point the court to Rodriguez. They said there's found no appellate case where a child was deemed not to be settled, well settled, living in the same place for several years, moving once, attending the same schools, which happened here, and being proficient in their education. On habitual residence itself, do we have anything about length of time and how to think about that? Length of time, certainly. There are cases, the Mueve's case had a length of time where the parties were settled and going to school. For how long in that case? I think it was a couple of years. A couple of years. Counsel, I take your ‑‑ this is on the way you started your argument on this issue of habitual residence. You talked about the court giving undue attention to the intention of the parties. Correct. I gather your argument is that that undue attention, as you see it, made the habitual residency determination clearly erroneous. Is that kind of the legal framework? Yeah, exactly. I mean, to Barron's point, I think after a year and a half, habitual residence was established. But it's even more so when you bring it forward, which I think is the correct application of Monanski to the president at the time of trial, which would be two and a half years. Okay, but in terms of the relevance, the importance of the fact, and these are factual findings that the district court made, that from the very beginning the parties had different views of what it meant to come to live in the United States. Their experiences in the United States only enhanced their different views of whether this was temporary or permanent. Why isn't that highly relevant to the habitual residence determination? You can't look at the, I guess not realistically, you can't look at the intention of a four-year-old and a two-and-a-half-year-old, how they viewed this. It seems the intention, the agreement of the parties, is quite an important consideration. How can that be clearly erroneous? Because it's one consideration amongst a myriad of considerations for the court to determine. And I think ultimately the determination has to be from the eyes of the children. It has to be from their perspective. This is their only life that they ever know, was being in Massachusetts. One child was here 80 percent of the time of that child's life. The other child, half their lives. They knew no other home in Massachusetts. Is the basic idea that given the length of time they had a residence in this country and no residence in another country, the intention simply can't support the notion that there was not a habitual residence. That's right. That's the basic idea. And also a child can develop a different habitual residence than their parent, which is also discussed in Monansky. So the fact that the parties diverged doesn't change the analysis which should be focused upon the eyes of the child and their perspective. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce herself on the record to begin. Good afternoon. May it please the Court. My name is Wendy Hickey, and I, along with my partner, Maureen McBrien, represent Tommy Jagir, the appellee in this case. Since Monansky was decided in 2020 by the U.S. Supreme Court, not one case in the United States has been overturned on appeal on a habitual residence argument. Your Honors, I suggest this is not the first case for that situation. There is no basis in fact or law to overturn this decision. This is a case about a Canadian family. There are two young children at issue who have now been back in Canada since September 7th of 2025 because mother's motion to stay was denied by both the district court and this court. The older of the children is now attending elementary school for the first time. The parties in this case were both born in Quebec, Canada. They were married there. Their children were born there. The children's extended families on both sides, cousins, aunts, uncles, grandparents, live in Canada. The native language for this family is French. They hold Canadian passports. The mother was here, is still here, on an E-2 non-immigrant visa, and that's important because there is no guarantee she'll be able to stay at the end of this case, which is what she wants. The trial judge noted that the legal status in the U.S. as non-immigrants was particularly important. She properly identified the applicable standard for determining habitual residence. Being a child's habitual residence depends on the totality of the circumstances specific to the case, and no single fact is dispositive of all cases. So what did she do? She took all of the facts, all of the evidence presented to her at trial, and applied all of those facts to the law, looking at the totality of the circumstances as of the point in time of the wrongful retention. And that is particularly important because Article III of the Hague Convention says you must look, when determining habitual residence, at the time of the wrongful retention, not a year after the wrongful retention, the time of the wrongful retention. Counsel, how do we think about the fact that the kids here are quite young and they had been here for most of their lives, or roughly half of their lives at the time of the retention, and they no longer had their own residence in Canada? So how is the habitual? Understanding it's a clearly erroneous review for a totality of the circumstances analysis, but the way the Supreme Court talked about habitual residence very generally is where are the kids at home. How are they not at home here in Massachusetts when they didn't have a place to live in Canada and they'd been here for a year and a half? So the issue really is did the parties abandon, or did the children abandon, a prior habitual residence? Because you can't form a new habitual residence until you've abandoned the prior one. And in this case, they didn't fully abandon the prior one. Yes, they did ultimately sell the house because they could no longer manage living in the same apartment as the wife's family when they were here, but they never completely abandoned the habitual residence in Canada. They maintained so many ties to Canada. They went back approximately every three weeks. And when they returned after selling the house, they stayed in the in-law apartment that my client is currently occupying within his parents' home, and he's currently having the children half of the time in that home. So this is a place the children were familiar with that they returned to approximately every three weeks and for all of the major holidays and things of that nature. So there was no true abandonment of the habitual residence in Canada to allow them to form a habitual residence in Massachusetts. Yes, they did spend a good chunk of their lives here, but there was always this very constant fluctuating back and forth. Counsel, your opponent emphasizes in making his totality of the circumstances argument that the court erred by not considering how the children had lived and adjusted after the period of wrongful retention as the district court found it. I gather at your position that that was entirely correct, that indeed by law, by the terms of the convention, the court was precluded from doing that given the timing of the lawsuit. Is that correct? That is absolutely correct, Your Honor. If you look at Article 12 of the Hague Convention, the first paragraph addresses what happens if the lawsuit is filed within the one year of the wrongful removal or retention. Paragraph 2 then goes on to address what happens and what do you look at in the event the lawsuit is filed after that one-year retention mark. There is no—it's pretty agreed upon that my client did file his lawsuit within the one year of that wrongful retention, so the next step of determining whether the children are now settled in their new environment doesn't apply to this case. Do you have an understanding of what the logic of that is, given it basically gives a year where impractical fact, particularly very young children, could become quite settled and at home in a place, and yet for some reason the courts are supposed to just blind themselves to that fact? There must be some logic to why that's happening. What's your explanation of why that makes sense? As far as my best answer, Your Honor, to that is oftentimes when there is a wrongful removal or retention, it is difficult for the left-behind parent to, first of all, get the information that they need to do, find counsel in the other country, and go through the process of first filing with the central authority in the country of habitual residence, which then gets sent to the central authority in this country. It would give too many potential benefits to the wrongful detainer. Correct, Your Honor, yes. And the other piece of it is, quite frankly, it's not always possible to find the child within a one-year period, and so they do have that grace period to locate the child. There are about 13 factors that a judge is supposed to look at when determining the totality of the children's circumstances. And, yes, you look at it from the children's perspectives, but you also, to some degree, have to look at it from the parents' perspectives when you have very young children such as these, and this judge did exactly that. She spent the first 19 pages of her findings of fact going through in detail what the factors were and what evidence she took and coming up with. Is there a case where, and I understand this point about they went back every three weeks to visit family, but not in a residence of their own when they went back. Is there a case in which young children have been living in a residence of their own in the place where they were allegedly wrongfully retained and have sold off the only other place that they could be living in, and yet, for this period of time, almost at least a year, and yet it's been determined, no, that's still not a habitual residence. To me, that's the hardest issue of this. It's a relatively long period of time. They're in an actual residence of the parents' choosing. They're going to school, and they have sold off the only other place they could actually reside. So I understand the point about intention. I understand the point they still have ties. There's the confounding factor that they're not citizens here, and it's unclear could they even stay here, and they retained their Canadian citizenship. But nonetheless, there is that length of time. Is there any case that has facts similar to this? What would you say is the best one? I am unaware of a case that addresses that specific issue, but I do want to point out to Your Honor that some of the facts aren't quite right. They lived in a residence of their own in Massachusetts for approximately ten months. So it was less than half of the time that they were here. And like I said before, when they returned to Canada, they went to the place where they are currently living half the time right now. So from a young child's mind, they don't know who owns the house that they're living in. It's perspective of who is there and what family is there and who is present. So you're saying they still really had a place to live in Canada? Yes, they did. They still had that connection. Their grandparents were there. Their extended family were all there. So they, from their perspective, they were returning home to a setting, whether it was the same house that they used to go back to or a new one. And there was no period of time in the United States where these parties rented their own place. The reason that they sold the Canadian residence was because they could not afford to either rent or purchase anything here. So there wasn't, they were in this sort of paid-for apartment with the mother's parents from time to time up until the time that. They were not the tenant? They were not. They were not on the lease. My client didn't even have keys to that apartment. So they were not the tenants. The mother was added to the lease, but the lease was very specific, and the lease is one of the exhibits. It was very specific that nobody was allowed to live on that premise unless they were on the lease. My client's name was never added to the lease. So, you know, I think, you know, if the question. Go ahead, Your Honor. Please finish your answer. I was going to say, so if the question turns on just the house alone, you know, there are 13 factors. Is it possible a different judge could have made a different decision based on that house component? It is possible, but that is not enough to overturn a case when a clear error review is required. So in many cases involving custody determinations relating to very young children, there will be a guardian ad litem appointed to represent the interests of the children, and pursuant to that, you may get expert testimony about what would be in the best interest of the children. I should know this, but I don't about the record. Was there any attempt to have the children evaluated by an expert and then have that expert opine what might be in the best interest of the children under these circumstances? There's none of that in this record. Is that right? Yes, Your Honor, that's correct. There is none of that in this record because in connection with the divorce action, it was stayed prior to it getting to any of that place. In terms of the Hague cases that I've been involved in, the only time a guardian ad litem is appointed is when there is an issue with whether or not a child is mature enough to testify and object to their return, and that wasn't the case here. No one raised the fact that these 2- and 4-year-old children were old enough to form an opinion and actually testify. That wasn't one of the defenses raised. And I've also seen it happen when there's been concerns about the parent who has retained the children not being able to return to another jurisdiction, and that is also not the case here. The mother has absolutely no reason that she cannot return to Canada. Counsel, can I ask you, these cases are obviously very hard, and it's 2 parents who both really want to be with their kids. Is there a legal way, as far as you're aware, that we take into account the fact that the kids have now been back in Canada? You started off your argument with the point that now it's been, I guess, 5 months or so that they've been back in Canada and the older child is going to school. Is that relevant at all legally to our analysis of whether the district court's ultimate finding was clearly erroneous? I'm not sure it's relevant to the analysis. I do think it's relevant to the entire case where no stay was granted to the mother, and so for the last 5 months, and again, these are young children, they have been back in Canada. Both parties have filed lawsuits for custody in Canada that are currently pending. There is currently a parenting plan that they're operating in accordance with. I do think all of those things... But they don't factor into the actual legal analysis because the rule we set is going to apply equally if they were here. But isn't there a doctrine that even if we were to conclude adverse to you about habitual settlement, there still could be discretion nonetheless to take into account those facts? Yes. So that is how it might play in, but on the actual legal judgment that we're reviewing, I don't see how it's relevant.  I do want to clarify one other point, though. There was a comment about the children attending school regularly here. The children did not attend school here. They were not yet school age when they were returned to Canada, and the oldest started school for the first time there. She never started school.  They attended daycare with four other children, correct. Yes. I recognize my time is just about up. I do want to touch on the concepts of consent and acquiescence as well very quickly because we didn't reach those pieces, and I would just say that consent, you have to look at what happened prior to the wrongful retention. And over time, there's no question that both parties were in agreement that they would come here for a trial basis, for a temporary basis. And so that was what was consented to was the temporary basis. And by August of 2024, there was no question that father no longer consented to the children remaining in the United States. And then if you turn to the concept of acquiescence very quickly, acquiescence by virtue of an agreement or court filing requires voluntary and uncoerced person participation. Thank you. Very quickly, counsel, what's the relationship between these proceedings and custody proceedings in Canada? Are they in suspension, pending? They're not. The Massachusetts proceedings are suspended. The Canadian proceedings are ongoing. They are. Correct. And what goes on here, how much time we take to decide, that does not affect? It does not. It does not. Okay. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself back on the record? He has a three-minute rebuttal. Thank you. I think we can both agree that there is no single fact that is positive of habitual residence. And I would just briefly on that point read from DaCosta where this court has held, refined to its bare essence, the text of the convention explicitly contemplates a court considering the child's circumstances after the petition has been filed without reference to his prior situation. And I think that same standard applies here. And I wouldn't cut the date off of August of 24. And I think in the reading of Monanski that is not the correct interpretation. But I'd like to touch upon the issue, another issue here that I didn't have a chance. And that's the issue of acquiescence. Because I, the father here, under the Nicholson standard that this court articulated, I believe clearly and unequivocally acquiesced to the Massachusetts Probate Court having this action. And, in fact, they do have this action. That's how this matter actually began. And I think it's very important that the court understands that this case began in Massachusetts in the Probate Court as a divorce action. This did not begin, unlike many hate convention cases and all the cases I've been involved with, that began with somebody leaving one country and ending up in another. This is a very novel set of facts and circumstances. This was parties that broke up where my client filed for divorce in the Massachusetts Probate Court. And it wasn't until months later, months later, after the father had filed an answer, a counterclaim, seeking custody, and the parties had entered into not one but two orders, did he then go and seek his right under the hate convention. And in Nicholson, this court has held that when there is a clear affirmative declaration, such as a court order, including a temporary order, and I'd point to the Fifth Circuit that specifically talked about that in the Lavery case, that that is itself acquiescence. Unlike in Nicholson, where it was not found to have the party acquiesced in that case, unlike in that case, it was a case where there was a restraining order here, which is not like this case. This divorce action is still pending in the Massachusetts Probate Court. To answer some of the stuff that I'd also agree is not as relevant. But this is very easy to be, if there's a change and a flip here, and a remand or a vacate of the order, that this goes back to the Massachusetts Probate Court because that divorce is still pending. And if common sense prevails, that's exactly what should have happened here. Thank you. Thank you. That concludes argument in this case.